UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WINDWARD BORA LLC,

                              Plaintiff,

                                                    **MEMORANDUM AND ORDER**

        - against -                                 19-CV-4533 (RRM) (RML)

OSNAT ZINNAR; OSNAT ZINNAR, Trustee of the
Osnat Zinnar Trust; ASAF ZINNAR; JPMORGAN
CHASE BANK, N.A.; and OIL SERVICES INC.,

                              Defendants.
------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

        Plaintiff Windward Bora LLC ("Plaintiff") brings this diversity action to foreclose on real

property owned by defendants Osnat and Asaf Zinnar pursuant to New York Real Property

Actions and Proceedings Law ("RPAPL") § 1301 *et seq.*  Plaintiff now moves for summary

judgment against Osnat Zinnar – the only defendant who answered the complaint – and for

default judgments against the other four defendants.  For the reasons set forth below, Plaintiff's

motions are granted.

## BACKGROUND

        The following facts are drawn from Plaintiff's Local Civil Rule 56.1 Statement of

Undisputed Material Facts, ("Plaintiff's 56.1 Statement"), the declaration of Plaintiff's attorney,

Shauna M. DeLuca, Esq.; the affidavit of Plaintiff's authorized representative, John Ramer; the

affidavit of Sherman Arnowitz, the President of Keyhole Capital Fund V; and exhibits attached

to the declaration and affidavits.  Since defendants have not controverted the statements

contained in Plaintiff's 56.1 Statement or the facts asserted in the declaration and affidavits listed

above, the statements in these documents are deemed admitted for purposes of the instant

motion.  *See* Fed. R. Civ. P. 56(e)(2); Local Civil Rule 56.1(d).

      On July 16, 2004, Osnat Zinnar ("Osnat") executed an "Equity Reserve Agreement,"

opening an Equity Reserve Line of Credit with National City Bank ("NCB").  (Ramer Aff. (Doc.

No. 31-14), Ex. 1.)  That agreement (the "Note") permitted her to obtain cash advances of up to

$161,950.00 over the next ten years.  (*Id.*, Ex. 1 at 1.)  According to the terms of the Note, Osnat

had the option of paying a fixed rate of interest or a variable rate equal to the Prime Rate as

recorded in *The Wall Street Journal*, but had to make a monthly minimum payment equal to the

interest accrued on the advances during the previous month.  (*Id.*, Ex. 1 at 2–3.)

      The Note provided that the line of credit would be secured by a mortgage on Osnat's

dwelling.  (*Id.*, Ex. 1 at 2.)  Accordingly, on the same day she signed the Note, Osnat and

defendant Asaf Zinnar ("Asaf") (collectively, "the Zinnars") executed a "Credit Line Mortgage"

(the "Mortgage") in favor of NCB, securing the loan with real property located at 965 Cedarhurst

Street in North Woodmere, New York (the "Property").  (*Id.*, Ex. 2.)  The Mortgage provided

that the Zinnars would be in default if they failed to make a monthly payment when due.  (*Id.*,

Ex. 2, at ¶ 8.)  In the event of a default, NCB would be entitled to accelerate the secured debt and

to foreclose the Mortgage.  (*Id.*, Ex. 2, at ¶ 9.)

      On May 11, 2013, several years after NCB merged into PNC Bank, N.A. ("PNC"), PNC

assigned the Mortgage to Keyhole Capital Fund V ("Keyhole").  (Arnowitz Aff., Ex. 3.)  PNC

also transferred the Note to Keyhole, as evidenced by an allonge executed by PNC and affixed to

the Note.  (Ramer Aff., Ex. 1.)  According to PNC's records and business records maintained by

Keyhole, the unpaid principal balance on the Note was $155,572.56 at the time it was transferred

to Keyhole and PNC had not received any payments since September 2011. (Arnowitz Aff. at ¶ 11 & Ex. 4.)

In January 2019, Keyhole sold the loan to Plaintiff. (Arnowitz Aff. at ¶ 13; Ramer Aff. at ¶ 12.) That sale is evidenced by an Assignment of Mortgage executed by Arnowitz, the President of Keyhole, (Ramer Aff., Ex. 3), and by an allonge to the Note, (*id.*, Ex. 1). According to Arnowitz, Keyhole never received any payments from the Zinnars, who still owed $155,572.56 in unpaid principal at the time Keyhole sold the loan. (Arnowitz Aff. at ¶ 14.)

In early May 2019, a law firm representing Plaintiff's loan servicer sent two identical demand letters to the Property, one addressed to each of the Zinnars. (DeLuca Decl., ¶ 6 & Ex. E.) These letters contained a Notice of Default, which listed "Total Arrears" at $124,859.28 as of May 7, 2019; demanded payment by June 6, 2019; warned that failure to pay could result in acceleration of the debt; and advised the Zinnars that a lawsuit to foreclose the mortgage might be commenced if the debt was accelerated. (DeLuca Decl., Ex. E, at 2.) The letters also attached a "Notice Pursuant to the Fair Debt Collection Practices Act" that contained the information required by 15 U.S.C. § 1692g(a). (*Id.*, Ex. E, at 3.) That notice stated that the debt totaled $203,494.73: $155,572.56 in unpaid principal; $45,557.17 in accrued interest; and $2,365.00 in unpaid late charges. (*Id.*, Ex. E, at 3.)

On the same day it sent the demand letters, the loan servicer's law firm sent each of the Zinnars the 90-day notice required by RPAPL § 1304. (*Id.*, ¶ 7 & Ex. F.)[1] Like the demand letters, the notices were sent to the Property via both regular mail and certified mail. The notices stated, among other things, that as of May 7, 2019, the Zinnars' loan was "2056 days and $124,859.28 in default." (*Id.*, Ex. F, at 1.)

---

[1] Although the DeLuca Declaration characterizes these notices as "90-Day statutory CPLR 1304 letters," the notices contain the language required by RPAPL § 1304.

On August 6, 2019 – 90 days after the notices were sent – Plaintiff commenced this action by filing a Verified Complaint.  (Complaint (Doc. No. 1).)  The complaint named five defendants:  Osnat; Osnat, as Trustee of the Osnat Zinnar Trust; Asaf; JPMorgan Chase Bank, N.A. ("JPMorgan"); and Oil Services Inc.  (*Id.*)  The complaint explained that in 2018, Osnat had become the owner of record of the Property in her capacity as Trustee of the Osnat Zinnar Trust, (*id.* at ¶ 4), and that JPMorgan and Oil Services were judgment creditors who had obtained state-court judgments against Asaf and had liens against the Property that were subordinate to the Mortgage lien, (*id.* at ¶¶ 6–7 & Ex. F).  The complaint alleged that the "unpaid principal amount due under the Note, and all accrued and unpaid interest and late charges" totaled $203,494.73 as of May 7, 2019.  (*Id.* at ¶ 4.)

On or about August 22, 2019, Osnat filed an answer to the complaint in her individual capacity.  That pleading consisted of a handwritten, pro se document that stated only: "I am responding to the summons and complaint by serving a copy of this answer on the attorney for the Mortgage Company who filed this complaint.  Defendants denied (deny) the allegations of the complaint."  (Answer (Doc. No. 13).)  Despite the reference to "Defendants," the document was signed only by Osnat, and made no reference to the Osnat Zinnar Trust.  No other defendant aside from Osnat responded to the complaint.

The First Motion of Summary Judgment

In October 2020, Plaintiff filed a motion for summary judgment.  The only evidence presented in support of that motion was an affidavit of Yonel Devico, the sole member of Plaintiff, and various exhibits attached thereto.  Devico asserted, among other things, that an unspecified "Defendant" had "executed and delivered a Note to National City Bank in the amount of $161,950.00," (Devico Aff. (Doc. No. 18-4) at ¶ 4), and that unspecified "Defendants

4

breached the obligations under the Note (and thereby caused a default under the Mortgage) by failing to pay the regular monthly payments which came due on September 20, 2013, … and all subsequent payments," (*id.* at ¶ 9.)  However, the Devico Affidavit made it clear that the Mortgage was not assigned to Plaintiff until December 27, 2018, (*id.* at ¶ 7), and that Plaintiff therefore lacked personal knowledge of the Zinnars' borrowing and payment history.  The affidavit did not reference or attach any documentation from Plaintiff's predecessors to substantiate the conclusory allegation that "Defendants" had defaulted on their obligations.

Although none of the defendants opposed Plaintiff's motion for summary judgment, the Court denied it without prejudice on the ground that Plaintiff had not established a prima facie case of foreclosure under New York law.  (3/29/2022 Order (Doc. No. 20).)  First, the Court noted that the Note did not establish an obligation to repay a particular amount of money but only created a home equity line of credit, enabling Osnat to borrow up to $161,950.00 upon terms specified in the document.  (*Id.* at 7.)  Plaintiff did not establish that the Zinnars ever used that line of credit or how much they borrowed.  (*Id.*)  Second, the Court found that Plaintiff had not established a default.  (*Id.* at 8.)  Suspecting that Plaintiff's counsel had failed to recognize the scope of the proof needed and had errantly omitted proof of undisputed facts that would have established a prima facie case, the Court grant Plaintiff leave to file a successive motion for summary judgment.  (*Id.* at 11.)

The Instant Motion

Plaintiff has now filed that motion, seeking summary judgment against Osnat in her individual capacity and default judgments against the other four defendants.  In support of the motion for summary judgment, Plaintiff has provided affidavits from Sherman Arnowitz, the President of Keyhole, and John Ramer, an authorized representative of Plaintiff, which attach

5

business records detailing the advances the Zinnars obtained from NCB and their repayment history. As noted in Plaintiff's Memorandum of Law in Support of the Instant Motion ("Plaintiff's Memo"), the affidavits and documents indicate that the unpaid principal balance on the loan has remained $155,572.56 since at least 2013, when NCB assigned the Mortgage to Keyhole. (Plaintiff's Memo (Doc. No. 31-1) at 7–8.) Plaintiff's Memo argues that the evidence adduced in support of the motion establishes a prima facie case to foreclose on the Property, but Plaintiff has not submitted a proposed judgment or specified the total dollar amount it seeks to recover from the Zinnars.

In moving for default judgment, Plaintiff focuses largely on whether the four defendant who did not answer the complaint "had notice of the suit and an opportunity to be heard." (Plaintiff's Memo at 10.) First, Plaintiff cites to those portions of the DeLuca Affidavit that establish service of process on the four defendants. Plaintiff then cites to *CIT Bank v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7422348, at *3 (E.D.N.Y. Sept. 25, 2015), *report and recommendation adopted sub nom. CIT Bank, N.A. v. Dambra*, No. 14-CV-3951 (SLT) (VMS), 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015), which noted that a "default judgment is ordinarily justified where a defendant fails to respond to the complaint." (Plaintiff's Memo at 10.) Plaintiff requests that a default judgment be entered against each of the four non-appearing defendants. (Plaintiff's Memo at 10–11.)

**STANDARD OF REVIEW**

Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it may

impact the "outcome of the suit under the governing law." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).  In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the Court must draw all "justifiable" or reasonable inferences in favor of the non-moving party.  *Anderson*, 477 U.S. at 255 (citation omitted); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).

Once the moving party has demonstrated that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted) (citation omitted); *see also Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (collecting cases and stating that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation").  In other words, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256.

"Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014).  "[T]he failure to respond to the motion does not alone discharge the burdens imposed on a moving party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).  "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented." *Wilson v. Air*

*Serv Corp.*, 705 F. App'x 43, 44 (2d Cir. 2017) (summary order) (quoting *Vermont Teddy Bear Co.*, 373 F.3d at 244).  The same standards for summary judgment apply where, as here, a non-movant is proceeding pro se.  *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015).  However, "special solicitude should be afforded *pro se* litigants generally, when confronted with motions for summary judgment."  *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988).

<u>Default Judgment</u>

Rule 55 of the Federal Rules of Civil Procedure creates "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)).  In most cases, as in this case, the first step is handled by the Clerk of Court.  Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).

After default is entered, a party may "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b).  "The decision whether to enter default judgment is committed to the district court's discretion."  *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015) (citing *Mickalis Pawn Shop*, 645 F.3d at 131).  In determining whether to grant a default judgment, a court first examines the allegations of the complaint.  "It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint."  *Mickalis Pawn Shop*, 645 F.3d at 137 (quoting *Vermont Teddy Bear*, 373 F.3d at 246).  However, a "default only establishes a defendant's liability if those [well-pleaded]

8

allegations are sufficient to state a cause of action against the defendants." *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, 629 F. App'x 111, 113 (2d Cir. 2015) (summary order).

## DISCUSSION

"In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012) (summary order). In other words, "the lender must prove . . . the existence of an obligation secured by a mortgage, and a default on that obligation.'" *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997) (quoting *Union Bank of Switzerland, New York Branch v. 890 Park Assocs.*, No. 92-CV-1557 (JFK), 1995 WL 121289, at *5 (S.D.N.Y. Mar. 20, 1995)).

As Plaintiff correctly notes, courts in this Circuit have held that "[u]nder New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note." *Builders Bank v. Charm Devs. II, LLC*, No. 09-CV-3935 (JG) (LB), 2010 WL 3463142, at *2 (E.D.N.Y. Aug. 30, 2010) (quoting *Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001)). However, "[n]o general allegations of default will be assumed to be true; rather, [t]here must be some proof in the form of an affidavit of a person with knowledge, or a complaint verified by a person with knowledge." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 79 (E.D.N.Y. 2019) (quoting *Fortress Credit Corp. v. Alarm One, Inc.*, 511 F. Supp. 2d 367, 371 (S.D.N.Y. 2007)) (alterations added in *Gustavia Home*). If the mortgagee can establish a prima facie case by making this showing, the mortgagor must make "an affirmative showing" that a defense to the action exists. *Builders Bank*, 2010 WL 3463142, at *2 (citing *Regency Sav. Bank*, 139 F. Supp. 2d at 466).

9

The evidence provided in support of the Instant Motion is sufficient to make out a prima facie case.  First, the Ramer Affidavit and the documents attached thereto establish that Plaintiff owns the Note and Mortgage.  According to Ramer, PNC, the successor by merger to NCB, assigned the Mortgage to Keyhole in 2013, and Keyhole assigned the Mortgage to Plaintiff on May 17, 2019.  (Ramer Aff. at ¶ 9.)  Ramer's statement are corroborated by notarized documents effectuating these assignments and by documents indicating that these assignments were registered with the Nassau County Clerk's Office.  (*Id.*, Ex. 3.)  Allonges affixed to the Note, which is attached to the Ramer Affidavit, also document that the Note was transferred from PNC to Keyhole to Plaintiff.  (*Id.*, Ex. 1.)  Although the allonges are undated, Ramer attests to the fact that the Note was in Plaintiff's possession on August 6, 2019, the date this action was commenced.  (*Id.* at ¶ 10.)

Second, the evidence provided by Plaintiff establishes that the Zinnars obtained advances pursuant to the Note, then defaulted on the obligation to repay.  According to PNC's records, the Zinnars borrowed a total of $239,203.05, and made payments totaling $139,231.37. (Ramer Aff. at ¶15 & Ex. 5.)  However, the Zinnars stopped making payments and defaulted on their obligations in October 2011.  (Arnowitz Aff. at ¶ 10; Ramer Aff., Ex. 5.)

When Keyhole acquired the loan from PNC, the unpaid principal balance was $155,572.56.  (Arnowitz Aff. at ¶ 10.)  Keyhole never received any payments on the loan, and the principal balance remained unchanged when Keyhole transferred its interest to Plaintiff in January 2019.  (*Id.*)  Plaintiff, too, never received any payments, (Ramer Aff. at ¶ 13), so the unpaid principal balance remains $155,572.56.

The Zinnars have not responded to the Instant Motion and, accordingly, have not made an affirmative showing that a defense to this action exists.  None of the defendants have created a

genuine issue of material fact that requires resolution at trial.  Accordingly, the Court grants summary judgment in favor of Plaintiff.

Default Judgment

With respect to the motion for a default judgment, Plaintiff's Memo does little more than repeat the factual showing Plaintiff already made in DeLuca's Affirmation in Support of Plaintiff's Request for Clerk's Certificate of Default (Doc. No. 28-1).  This showing satisfied the requirements of Rule 55(a), as evidenced by the fact that the Clerk of Court correctly issued a Certificate of Default with respect to the four non-appearing defendants.  (Doc. No. 30.)  That showing alone, however, does not establish a basis for a default judgment.  *See Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) ("A court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment.")  As noted above, the defaulting defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaint.  *See Mickalis Pawn Shop* 645 F.3d at 137.  The Court must still determine if those allegations are sufficient to state a cause of action against the defendants.  *See Quadrozzi Equip. Leasing Corp.*, 629 F. App'x at 113.

Having carefully examined the well-pleaded allegations in the complaint, the Court finds them sufficient to state a claim against Asaf.  The complaint alleges, and the exhibits attached to the pleading establish, that Asaf was a signatory to the Mortgage, which secured repayment of the advances issued pursuant to the Note.  The complaint alleges that the Zinnars failed to make payments required by the Note,  (Complaint at ¶16), which entitled the holder of the Note and Mortgage to foreclose on the Property.  Accordingly, the Court will enter a default judgment against Asaf Zinnar.

11

The complaint does not state a claim against the three remaining defaulting defendants. The pleading does not contain any allegations regarding Osnat Zinnar, Trustee of the Osnat Zinnar Trust, except to note that this defendant is a "necessary party" by virtue of being the owner of record of the Property.  (*Id.* at ¶ 4.)  Similarly, the complaint does not contain any allegations regarding JPMorgan and Oil Services, except to note that these defendants are "judgment creditors" and to imply that they have liens on the Property by virtue of having registered their judgments with the Nassau County Court.  (*Id.* at ¶¶ 6–7.)

These three defendants are "nominal defendants" – *i.e.*, defendants against whom no relief is sought.  *See Rudersdal, EEOD v. Harris*, No. 18-CV-11072 (GHW), 2020 WL 5836517, at *9 (S.D.N.Y. Sept. 30, 2020); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1048 (S.D.N.Y. 1981); *Christiana Bank & Tr. Co. v. Dalton*, No. 06-CV-3206 (JS) (ETB), 2009 WL 4016507, at *5 (E.D.N.Y. Nov. 17, 2009).  They are named as defendants only because they are among the necessary parties listed in RPAPL § 1311.  This list includes "[e]very person having an estate or interest in possession" in the mortgaged property, (*id.*, § 1311(1)), and "[e]very person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff," (*id.*, § 1311(3)).

"Courts in this district have routinely held that entry of a default judgment under [Rule] 55 is appropriate where the complaint alleges 'nominal liability.'"  *E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501 (KAM) (VVP), 2014 WL 4804872, at *7 (E.D.N.Y. Sept. 10, 2014), *report and recommendation adopted*, 2014 WL 4804901 (E.D.N.Y. Sept. 26, 2014); *see OneWest Bank, N.A. v. Raghunath*, No. 14-CV-3310 (RJD) (MDG), 2015 WL 5772272, at *3 (E.D.N.Y. Sept. 8, 2015), *report and recommendation adopted*, 2015 WL 5774784 (E.D.N.Y. Sept. 29, 2015). "When a default judgment is entered against a defendant with a 'nominal interest' in a property,

any such interest in the relevant property is terminated." *E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3365091, at *4 (E.D.N.Y. May 9, 2016), *report and recommendation adopted*, 2016 WL 3102021 (E.D.N.Y. June 2, 2016).  Accordingly, the Court grants Plaintiff's motion for a default judgment against JPMorgan, Oil Services, and Osnat Zinnar, Trustee of the Osnat Zinnar Trust.  The Court holds that these parties' interests in, and liens against the Property, if any, are extinguished.  The judgment creditors may, however, claim any surplus funds arising from the sale of the subject property.  *See* RPAPL § 1361; *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204 (FB), 2013 WL 12357754, at *2 (E.D.N.Y. Jan. 22, 2013).

## CONCLUSION

For the reasons set forth above, the Court grants plaintiff Windward Bora, LLC, summary judgment against defendant Osnat Zinnar and default judgments against the other four defendants.  Within thirty days of this Memorandum and Order, Plaintiff shall submit a proposed judgment of foreclosure and sale and a letter proposing three referees, along with a brief description of their qualifications.  The proposed judgment must set forth the precise dollar amount owed to Plaintiff and Plaintiff shall submit briefing and documentation in support of that dollar amount, specifying the unpaid principal, the interest owed on that principal, and the interest rate used to calculate the interest.  The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to Osnat Zinnar and to note that mailing on the docket.

SO ORDERED.

Dated:  Brooklyn, New York
         December 28, 2023

*Roslynn R. Mauskopf*
ROSLYNN R. MAUSKOPF
United States District Judge

13